**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 10-cv-01648-CMA-KLM

HARRY JAMES,

    Plaintiff,

v.

HEUBERGER MOTORS, INC., a Colorado corporation,

    Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

This matter is before the Court on the Motion for Summary Judgment of Defendant Heuberger Motors (Doc. # 45), and Plaintiff Harry James's Motion for Partial Summary Judgment on Defendant's Second, Third, Eighth, and Twelfth Affirmative Defenses (Doc. # 42). Plaintiff alleges that Defendant retaliated against him in violation of 42 U.S.C. § 1981 for asserting that he had suffered discrimination because of his race, and that he experienced "retail discrimination" on the basis of race, again in violation of 42 U.S.C. § 1981. Plaintiff seeks compensatory and punitive damages, as well as attorney and expert witness fees under 42 U.S.C. § 1988. Jurisdiction is proper pursuant to 28 U.S.C. § 1331. For the reasons discussed below, the Court grants Defendant's summary judgment motion and denies Plaintiff's motion for partial summary judgment as moot.

## I. BACKGROUND

**A. FACTS**[1]

Plaintiff is African American and began working for Defendant in June 2007. (Doc. # 1 at 1-2.) Plaintiff alleges, and Defendant denies, that shortly after he began working at Heuberger Motors, the General Sales Manager, Robert Ieans, who is "of mixed African-American ancestry" (Doc. # 45 at 4), told Plaintiff that he "did not like Blacks [and] that his father was Black and he hated him" (Doc. # 1 at 2).

On September 12, 2007, Plaintiff and another employee, Soraya Cason, got into a verbal altercation. (*Id.*) The parties dispute how the altercation began and what transpired. However, they agree that Cason made derogatory comments toward

---

[1] At the outset the Court notes that Plaintiff has failed to meet the obligation of supporting his assertion that certain facts are genuinely disputed by citing to "*particular parts* of materials in the record." *See* Fed. R. Civ. P. 56(c)(1)(a) (emphasis added). In response to Defendant's summary judgment motion, Plaintiff's factual recitation cites "Attachment 1"—25 times by the Court's informal count (*see* Doc. # 64 at 1-9)—often as support for his assertion that certain facts are disputed (*see, e.g.*, Doc. # 64 at 2, ¶ 12 ("Denied; Plaintiff denies the substance of the write-up. See Attachment 1.")). "Attachment 1" is a lengthy exhibit containing: Plaintiff's affidavit; a personnel action for another employee; several pages of a deposition of a different employee; an email between two employees; several pages of a deposition of yet another employee; a letter from Plaintiff to "Volkswagen Credit"; a time-sequence chart presumably prepared by Plaintiff's counsel; Plaintiff's notice of termination; and a vehicle lease agreement from Volkswagen Credit. (Doc. # 64, Ex. 1.) The Court is aware of only one instance in the statement of facts where Plaintiff specifies the material referenced within "Attachment 1." (*See* Doc. # 64 at 3, ¶ 1 ("See Attachment 1, Affidavit of [Plaintiff].").) This is insufficient under Rule 56(c)(1). *See, e.g.*, *S.E.C. v. Capital Holdings, L.L.C.*, No. 03-cv-00923, 2006 WL 1660541, at *1 (D. Colo. June 12, 2006) (unpublished) ("It is [movant's] duty . . . to specifically set forth the facts . . . that arguably entitle him to relief. [The court] is neither required nor inclined to peruse the record . . . in search of evidence that might support his motion.") (citing *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.")).
    Nevertheless, because the facts Plaintiff disputes are not material to his claims, as discussed below, his lack of compliance with Rule 56(c)(1) does not preclude the Court from granting Defendant's motion. Here, the Court determines that Defendant has shown that there is no dispute as to any material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(e)(3) (If a nonmoving party "fails to properly support an assertion of fact . . . as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it.").

Plaintiff, including telling him that "if he did not like being an American, then he should get on a boat and go back to Africa." (Doc. # 45 at 2.)

After the altercation, Cason reported that it began by Plaintiff complaining about some vehicle problems he was having and that at one point he said "he was going to shoot everyone and save one bullet for him[self]." (Doc. # 45, Ex. 1 at 24.) Cason also reported that she had confronted Plaintiff, at which point he referred to her as a "bitch," told her to "shut the fuck up," and threatened to "chop [her] into little pieces" with a chainsaw. (Doc. # 45, Ex. 1 at 25.) Another employee reported that he had heard Plaintiff tell Cason she should "go[] back to Nicaragua to pick coconuts and cocaine" (Doc. # 45, Ex. 2 at 15), which Defendant asserts was "in reference to [Cason's] Nicaraguan origin" (Doc. # 45 at 2).

Plaintiff disputes those versions of events. He alleges that Cason "appeared to be intoxicated and followed [him] around calling him racially denigrating names." (Doc. # 1 at 2.) In a statement written the day after the altercation to Steve Backman, Human Resource Manager at Heuberger Motors, Plaintiff admitted to telling Cason, "I would like to chop you up with a chainsaw," but asserted that his statement was provoked by Cason suggesting that she knew people who could get away with committing such an action against Plaintiff. (Doc. # 45, Ex. 1 at 22.) In that same statement, Plaintiff relayed the comments Cason had made during the altercation, and requested that Backman advise her to stay away from him. (*Id.*)

On September 21, 2007, Defendant issued a Notice of Personnel Action to both Plaintiff and Cason for the altercation. (Doc. # 45, Ex. 1 at 16, 19.) Plaintiff's personnel

3

action stated that he had violated company policy on, among other things, harassment and sexual harassment. (Doc. # 45, Ex. 1 at 19.)

On September 22, 2007, Plaintiff was issued another Notice of Personnel Action for having "a fellow salesperson show his personal car to a customer on company time, without prior [management] approval." (Doc. # 45, Ex. 1 at 21.) Plaintiff "denies the substance of" this personnel action. (Doc. # 64 at 2.)

Plaintiff further alleges, and Defendant denies, that around the time Defendant issued these personnel actions, Ieans "made racially charged remarks to Plaintiff." (Doc. # 1 at 3.) Defendant also denies Plaintiff's assertion that in September 2007 he complained to the President and Owner of Heuberger Motors, Gunnar Heuberger, about the perceived harassment (*id.*), as well as Plaintiff's assertion that Heuberger told him his discrimination complaint was "monkey shit" (Doc. # 1 at 4). Defendant further disputes Plaintiff's assertions that he:

- complained in September 2007 to Backman about having been discriminated against (*id.*);
- was isolated at work because Ieans had instructed other salesmen "not to speak or interact with Plaintiff" (*id.*); and
- complained in a January 17, 2008, meeting with Backman about continuing discrimination by Ieans (*id.*).

However, the parties agree that on January 18, 2008, Ieans filed a complaint with Heuberger Motors, alleging that Plaintiff had harassed him, although Plaintiff denies "the substance of the complaint." (Doc. # 64 at 2.) Ieans's complaint stated, in pertinent part, that during a meeting on January 18, 2008, while other managers were present,

4

Plaintiff referred to Ieans as "a black, gay Uncle Tom." (Doc. # 45, Ex. 1 at 12.) In his deposition, Plaintiff admitted to having referred to Ieans as "a black, gay Uncle Tom," although he asserted the comment was made to Backman. (Doc. # 45, Ex. 4 at 5.)

On January 18, 2008, Plaintiff received a Notice of Personnel Action, terminating him from employment at Heuberger Motors (the "Termination Notice"). (Doc. # 45, Ex. 1 at 18.) The Termination Notice recited several previous warnings regarding Plaintiff's "misconduct as an employee of Heuberger Motors," including: "conduct in which [Plaintiff] verbally harassed employees and customers; threats of violence against an employee; [and] improperly attempting to sell [his] personal vehicle on company time." (*Id.*) It also stated that Plaintiff had left work early on January 17, 2008, and that when questioned on January 18, 2008, about his work attendance, Plaintiff "racially and sexually harassed Robert Ieans." (*Id.*) Finally, the Termination Notice highlighted instances of "insubordination," including ignoring a request on January 18, 2008, to report to the business office when asked to do so. (*Id.*) A hand-written note at the bottom of the Termination Notice warned Plaintiff that he was thereafter "not permitted on Heuberger Motors property." (*Id.*) Plaintiff refused to sign the Termination Notice (*id.*) and asserts that the reasons listed in it are false (Doc. # 1 at 4-5).

On March 5, 2010, more than two years after being terminated, Plaintiff returned to Heuberger Motors to purchase a vehicle, but the dealership refused to sell him a car and he was told to leave the premises. (Doc. # 1 at 5.)

**B.    PROCEDURAL HISTORY**

Plaintiff filed his Complaint with this Court on July 12, 2010. (Doc. # 1.) Defendant filed its Answer on August 3, 2010, raising several affirmative defenses.

(Doc. # 5.) On March 17, 2011, Defendant filed its Motion for Summary Judgment (Doc. # 45), and Plaintiff filed his Motion for Partial Summary Judgment on Defendant's Second, Third, Eighth, and Twelfth Affirmative Defenses (Doc. # 42). Plaintiff responded to Defendant's motion on April 27, 2011 (Doc. # 64), and Defendant filed its reply on May 16, 2011 (Doc. # 65). Defendant responded to Plaintiff's motion on April 7, 2011 (Doc. # 50), and Plaintiff filed his reply on April 21, 2011 (Doc. # 63).

## II. **STANDARD OF REVIEW**

Under Fed. R. Civ. P. 56, summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See, e.g.*, *Russillo v. Scarborough*, 935 F.2d 1167, 1170 (10th Cir. 1991). A factual dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Allen v. Muskogee*, 119 F.3d 837, 841 (10th Cir. 1997). A disputed fact is "material" if, under the pertinent substantive law, it is essential to the proper disposition of the claim. *See, e.g.*, *Wright v. Abbott Labs, Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).

The movant bears the initial burden of showing an absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant need not negate the non-movant's claim but, rather, only point to an absence of evidence supporting it. *Id.* at 325. If the movant meets its burden, the non-movant may not rest on its pleadings; instead, it must come forward with specific facts showing a genuine issue for trial as to each of its claims. *Id.* at 325-26.

When reviewing a summary judgment motion, the Court views the record, and draws all reasonable inferences therefrom, "in the light most favorable to the party

opposing summary judgment." *Lewis v. Circuit City Stores, Inc.*, 500 F.3d 1140, 1146 (10th Cir. 2007).

### III.  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The Court will first take up Defendant's summary judgment motion, because Plaintiff's motion for partial summary judgment would become moot if Defendant's motion were granted.

**A.    RETALIATION CLAIM**

The Court initially addresses the proper framework for analyzing this claim. Defendant asserts that summary judgment under 42 U.S.C. § 1981 is governed by the burden-shifting analysis in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). (Doc. # 45 at 8.)  Plaintiff counters, almost incomprehensibly, that "[f]act Issues exist on the both the direct/mixed motive .and the Indirect/pretext Method of Proof on the claim of Section 1981 retaliation." (Doc. # 64 at 13.)

Generally, a plaintiff may prove a § 1981 retaliation case "either by direct evidence of discrimination, or by adhering to the burden-shifting framework of *McDonnell Douglas*."  *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011).  Direct evidence consists of "evidence, which if believed, proves the existence of a fact in issue without inference or presumption." *Hall v. U.S. Dep't of Labor*, 476 F.3d 847, 854 (10th Cir. 2007) (quotation marks and citation omitted).  In other words, direct evidence "demonstrates on its face that the employment decision was reached for discriminatory reasons." *Danville v. Regional Lab Corp.*, 292 F.3d 1246, 1249 (10th Cir. 2002).  For example, an employer's policy that expressly prohibits hiring people of a certain race or national origin would constitute direct evidence of discrimination.

*See, e.g.*, *Sanders v. Sw. Bell Tel., L.P.*, 544 F.3d 1101, 1105 (10th Cir. 2008). Circumstantial evidence, on the other hand, "allows the jury to draw a reasonable inference that discrimination occurred." *Danville*, 292 F.3d at 1249. Such evidence includes "[s]tatements of personal opinion, even when reflecting personal bias or prejudice . . . because the trier of fact must infer discriminatory intent from such statements." *Hall*, 476 at 855.

Here, the Court interprets Plaintiff's above-quoted assertion as suggesting that he has direct evidence of Defendant's alleged retaliation. However, none of the four pieces of evidence that Plaintiff proffers constitute such evidence. First, Heuberger's alleged statement that Plaintiff's discrimination complaint was "monkey shit" (Doc. # 1 at 4) does not demonstrate discriminatory intent on its face but, rather, requires an inference ascribing to it such an intent. Second, a statement Backman allegedly made to Plaintiff – to keep a "low profile" (Doc. # 64 at 15) – is likewise non-discriminatory on its face. Third, a purported change in the attendance policy at Heuberger Motors (Doc. # 64 at 5) would require several inferences, as evidenced by Plaintiff's use of parentheticals in describing the change,[2] to establish that it was in any way prompted by discriminatory animus. Fourth, the Termination Notice does not present, contrary to Plaintiff's assertion, direct evidence of discrimination. Rather, as discussed below, it lists several non-discriminatory – and clearly no facially discriminatory – reasons for

---

[2] Plaintiff alleged that "[a]t the sales meeting on Friday, January 18, Ieans said that there was one individual who is a problem ([Plaintiff] was in the meeting); that the salesmen were not helping him (i.e. get rid of the problem person); so Ieans had to change the policy and require management approval for a shift change . . . ." (Doc. # 64 at 5.) To establish by this statement that Ieans was racially discriminating against Plaintiff, it would be necessary to infer: (1) that Ieans was speaking about Plaintiff; (2) that his desire for help was to terminate Plaintiff; and (3) that he was motivated to do so by racial considerations. Thus, this statement is not direct evidence of discrimination. *See, e.g.*, *Gorny v. Salazar*, 413 Fed. Appx. 103, 107-08 (10th Cir. 2011) (unpublished) (explaining, with several examples, what does not constitute direct evidence).

Plaintiff's termination. Finally, other than the Termination Notice, all of the evidence Plaintiff cites relates to statements or events that occurred *before* he was fired. Thus, the Court is unclear, and Plaintiff fails to explain, how such evidence is at all relevant to showing the *retaliation* Plaintiff asserts.

Accordingly, because Plaintiff does not have direct evidence to prove his § 1981 retaliation claim, the Court will address the claim pursuant to the *McDonnell Douglas* framework.

Under *McDonnell Douglas*, the plaintiff must first establish a *prima facie* case of retaliation by the defendant. *See, e.g.*, *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1181 (10th Cir. 2006). If he does so, the burden shifts to the defendant to show "a legitimate non-discriminatory or non-retaliatory reason for the adverse employment action." *See id.* Finally, if the defendant meets this burden, the burden shifts back to the plaintiff to demonstrate that the defendant's "proffered reason is pretext." *See id.*

To meet its initial burden of establishing a *prima facie* case of retaliation, a plaintiff must show that: (1) he "engaged in protected opposition to discrimination"; (2) he "suffered an adverse action that a reasonable employee would have found material"; and (3) "there is a causal nexus" between his opposition and the defendant's adverse action. *See id.*

Defendant does not dispute that Plaintiff engaged in protected opposition to discrimination or that he suffered an adverse employment action. Instead, Defendant asserts that Plaintiff's *prima facie* case fails because he cannot establish the necessary causal nexus. (*See* Doc. # 45 at 13.) Accordingly, the Court begins its analysis of Plaintiff's retaliation claim at step three of the *prima facie* case.

1. <u>Causal Nexus</u>

"A retaliatory motive may be inferred when an adverse action closely follows protected activity." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999). In such cases, the employee's termination, standing alone, can be sufficient to establish causation. *Compare Ramirez v. Okla. Dep't of Mental Health*, 41 F.3d 584, 596 (10th Cir. 1994) (six-week period between protected activity and adverse action may, by itself, establish causal nexus), *overruled on other grounds by Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186 (10th Cir. 1998), *with Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (twelve weeks, standing alone, is insufficient to establish causation).

Defendant asserts that while "Plaintiff made some vague claims in his deposition about verbal complaints to Steve Backman of racial discrimination . . . these statements were alleged to have been made shortly after Plaintiff was hired in June 2007, some seven months before he was terminated." (Doc. # 45 at 13.) However, Plaintiff asserted—both in his Complaint (Doc. # 1 at 4) and in his deposition (Doc. # 45, Ex. 4 at 5)—that he complained to Backman on January 17, 2008, which was the day before he was terminated, about perceived discrimination by Ieans.

Accordingly, because Plaintiff's termination immediately followed his alleged complaint to Backman, the Court determines that he has shown the necessary causal nexus and, thus, has established his *prima facie* case of retaliation. Therefore, the burden shifts to Defendant to demonstrate a legitimate non-discriminatory reason for terminating Plaintiff.

2. <u>Legitimate Non-Discriminatory Reason</u>

Under *McDonnell Douglas*, the employer's burden of establishing a legitimate non-discriminatory reason for the adverse employment action is "exceedingly light." *See Zamora v. Elite Logistics, Inc.*, 478 F.3d 1160, 1165 (10th Cir. 2007) (en banc); *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1043 (10th Cir. 2011) (employer's stated reasons shifted burden back to plaintiff because they were "on their face . . . legitimate and non-discriminatory").

Defendant cites its exhibits and statement of facts for what it characterizes as "a myriad of legitimate, and non-discriminatory, reasons" to have terminated Plaintiff. (Doc. # 45 at 13.)  Those reasons include the altercation with Cason, the personnel action relating to the attempted sale of Plaintiff's personal car, and the discrimination complaint filed by Ieans.

These reasons are facially non-discriminatory and easily satisfy Defendant's "exceedingly light" burden.  Moreover, Plaintiff does not directly dispute that Defendant has satisfied the second step in the *McDonnell Douglas* framework.  Instead, he argues that the reasons Defendant gives are merely pretextual.  Thus, the Court turns its attention to the final step in the analysis.

3. <u>Pretext</u>

A plaintiff may show pretext "by demonstrating such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted nondiscriminatory reasons." *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1167

(10th Cir. 2007).[3]  However, when a plaintiff "presents no evidence" to undermine the defendant's non-discriminatory reasons, "summary judgment for the employer is appropriate." *See id.* at 1169.

Plaintiff argues that "there are a number of reasons [that Defendant's] proffered reasons for termination are pretextual." (Doc. # 64 at 21.) However, none of the arguments Plaintiff puts forward undermine Defendant's reasons. Because several of Plaintiff's arguments share similar traits, the Court will group those arguments together and address them as distinct categories of arguments.

The first category consists of unsubstantiated assertions by Plaintiff that Defendant's evidence demonstrates a "cover-up" concocted to terminate Plaintiff while protecting Defendant from the threat of litigation. (*See, e.g.*, Doc. # 64 at 16-17, ¶¶ 2, 7.) Plaintiff, by cross-reference to his statement of facts, cites "[A]ttachment 2" and "Attachment 8" (*id.*), but neither "attachment" is actually found attached to Plaintiff's response. (*See* Doc. # 64 (containing only one exhibit).) It is possible that those references are meant to indicate pages marked "EXHIBIT #2" and "EXHIBIT #8" within "Attachment 1." However, those pages are merely the notices of termination for Backman (see below) and Plaintiff, neither of which evinces an alleged "cover-up" as Plaintiff asserts.

Plaintiff's second category of arguments focuses on reasons given by Defendant for his termination. Although some of these reasons might be potentially unmeritorious, that lack of merit does not detract from the other reasons, which are meritorious.

---

[3] One common method for a plaintiff to prove pretext, for example, is to provide evidence that he "was treated differently from other similarly-situated employees who violated work rules of comparable seriousness." *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000).

For example, Plaintiff argues that the statement in the Termination Notice, which mentions that he left work early on January 17, 2008, is not a valid reason for firing him because the policy he supposedly violated was not put into place until January 19, 2008, after his termination. (Doc. # 64 at 17, ¶ 6.) However, even if true, this assertion does not detract from the other reasons Defendant gave in the Termination Notice, perhaps most particularly that when questioned about leaving work early, Plaintiff purportedly "racially and sexually harassed Robert Ieans." (Doc. # 45, Ex. 1 at 18.) Similarly, Plaintiff argues that Defendant's citation to his alleged conduct after the January 18, 2008, meeting – "slamming the door as he left" the office and "going down to another employee and telling him that 'they need an ass kisser upstairs'" (Doc. # 45 at 5) – cannot fairly be asserted by Defendant in its summary judgment motion because it was "not relied on in the termination notice" (Doc. # 64 at 17-18, ¶ 10.). Even if Plaintiff were correct, and Defendant could not rely on this conduct, doing so is not fatal to Defendant's argument. Unlike *Plotke v. White*, 405 F.3d 1092 (10th Cir. 2005) (district court's reliance on employer's explanation that there were several reasons for employee's termination was erroneous, where employer had only offered one specific reason at the time of termination), which Plaintiff cites, Defendant included several reasons, as already mentioned, in the Termination Notice. Therefore, and in accordance with Plaintiff's suggestion, the Court will "ignore [the *post hoc*] evidence" Defendant cites in its motion. (Doc. # 64 at 18, ¶ 10.)

Plaintiff's third category of arguments includes his own *post hoc* attempt to delegitimize Defendant's proffered reasons by including evidence that Backman was, himself, subsequently fired for violating the harassment policies at Heuberger Motors.

(Doc. # 64 at 16, ¶ 2; Ex. 1 at 2.)[4] But vis-à-vis Plaintiff's position, such evidence seems to be at best irrelevant and, at worst, a confirmation that Heuberger Motors enforces its harassment and sexual harassment policies even handedly.

Finally, and perhaps most troubling for Plaintiff, is the last category of arguments that consists of Plaintiff disputing the facts underlying his termination. For instance, Plaintiff asserts that he "has presented evidence of the falsity of the . . . reasons for the termination." (Doc. # 64 at 17, ¶ 8.) This represents a fundamental misunderstanding as to how a retaliation claim works. Put simply, the key questions are whether the employer "actually relied, honestly and in good faith," on the allegations of the employee's misbehavior or, rather, whether such allegations merely provided a pretext that allowed the employer to discriminate against the employee. *See, e.g.*, *Swackhammer*, 493 F.3d at 1170 ("it is not what [the employer] *should* have known that matters, but whether he acted in good faith upon the beliefs he held" (emphasis in original)). Accordingly, Plaintiff's arguments – disputing "the substance of" the personnel actions filed against him – miss the point. Even if, as Plaintiff alleges, he did not commit the underlying violations, his arguments fail to raise a genuine issue of **material** fact – *i.e.*, one that goes to the falsity of Defendant's explanation. *See id.* at 1169-70 ("Evidence that the employer should not have made the termination decision – for example, that the employer was mistaken or used poor business judgment – is not sufficient to show that the employer's explanation is unworthy of credibility."); *see also Simms v. Okla. ex rel. Dep't of Mental Health and Substance Abuse Servs.*, 165 F.3d

---

[4] Plaintiff states that "[t]he evidence shows Bachman [*sic*] was sexual harassment . . . ." (Doc. # 64 at 16, ¶ 2.) Presumably, Plaintiff means something along the lines of "Backman was terminated for having violated the sexual harassment policy." The Court interprets the statement as such, in light of the corroborating evidence Plaintiff provided. (*See* Doc. # 64, Ex. 1 at 2.)

1321, 1330 (10th Cir. 1999) (noting that federal courts do not sit as "super personnel department[s]" to "second guess[] employers' business judgments" (internal quotation marks and citations omitted)).

Defendant has consistently cited several reasons for Plaintiff's termination, including: the altercation with Cason, the personnel action involving the attempted sale of Plaintiff's car, and the discrimination complaint that Ieans filed. The Court finds that Plaintiff has failed to meet his burden of demonstrating that Defendant's proffered reasons were pretextual. Accordingly, the Court grants Defendant's motion on this claim.

**B.     "RETAIL DISCRIMINATION" CLAIM**

To establish a *prima facie* case of discrimination in the retail setting, Plaintiff must show that: (1) he is "a member of a protected class"; (2) Defendant "had the intent to discriminate on the basis of race"; and (3) that such discrimination "interfered with a protected activity as defined in § 1981." *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1101-02 (10th Cir. 2001). Section 1981 protects, among other rights, the right to "make and enforce contracts." 42 U.S.C. § 1981.

Plaintiff asserts that he was not allowed to purchase a car at Heuberger Motors on March 5, 2010, because of "Defendant's racial animus from Plaintiff's employment." (Doc. # 64 at 19.) The only potentially meritorious assertion he advances for this position is that an allegedly white individual, Bill Klusner, was purportedly "terminated for fraud/attempted theft, [but] was [still] permitted to transact business with the company." (Doc. # 64 at 9.) But Plaintiff supports this assertion only by citing "Attachment 1." (*Id.*) That attachment, as already indicated (*see* footnote 1, *supra*), does not contain an

affidavit from, or deposition of, Bill Klusner. Further, the Court is unaware of, nor does Plaintiff cite to, any document elsewhere in the record supporting his assertion.

Defendant, however, asserts (Doc. # 45 at 15), and cites to a deposition of Chris Kaminski, a Sales Manager at Heuberger Motors, which supports Defendant's assertion (Doc. # 45, Ex. 5 at 4), that Plaintiff was not allowed to purchase a car in accordance with his Termination Notice, which stated that Plaintiff was "not permitted on Heuberger Motors property" (Doc. # 45, Ex. 1 at 18). Plaintiff does not assert that an employer who has properly terminated its employee for non-discriminatory reasons is precluded from barring the employee from returning to the premises.

Accordingly, Defendant is entitled to summary judgment on this claim because Plaintiff has failed to demonstrate the existence of a genuine issue of material fact as to Defendant's reason for prohibiting him from purchasing a vehicle.[5]

## IV. PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Because the Court has granted Defendant's summary judgment motion, Plaintiff's motion for partial summary judgment, in which the Court would view the record in the light most favorable to **Defendant**, is denied as moot.

---

[5] Even if a genuine issue of material fact existed, Plaintiff fails to meet the third prong of a *prima facie* case of discrimination in the retail setting. Plaintiff alleges, again without support other than a general reference to "Attachment 1," that he had made "a tentative deal with the salesman" before being asked to leave Heuberger Motors. This unsubstantiated assertion is directly controverted by Defendant's evidence that Plaintiff was not in the final stages of purchasing a car but, rather, was spotted while in the sales lot and was asked to leave at that time. (Doc. # 45, Ex. 5 at 4.) Therefore, even if Plaintiff could establish that Defendant discriminated against him on the basis of race, he has failed to raise a genuine issue of material fact as to whether Defendant impinged his right to make a contract. *See, e.g.*, *Hampton*, 247 F.3d at 1104 ("a § 1981 claim for interference with the right to make and enforce a contract must involve the actual loss of a contract interest, not merely the possible loss of future contract opportunities").

## V. <u>CONCLUSION</u>

Based on the foregoing analysis, the Court ORDERS that Defendant's Motion for Summary Judgment (Doc. # 45) is GRANTED and Plaintiff's Motion for Partial Summary Judgment on Defendant's Second, Third, Eighth, and Twelfth Affirmative Defenses (Doc. # 42) is DENIED AS MOOT. Accordingly, this case is DISMISSED WITH PREJUDICE. It is

FURTHER ORDERED that the Final Trial Preparation Conference, scheduled for November 10, 2011, and the five-day jury trial, scheduled to begin November 28, 2011, are VACATED. It is

FURTHER ORDERED that Defendant shall have its costs by the filing of a Bill of Costs with the Clerk of the Court within ten days of the entry of judgment. However, each party shall bear its own attorney fees.

DATED: November __04__, 2011

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge